# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oley Valley Development, Inc.,    :
                                    :
          Appellant         :
                                    :   No. 1705 C.D. 2014
          v.               :   No. 1706 C.D. 2014
                                    :   No. 1833 C.D. 2014
Berks County Board of Assessment   :   Argued: May 5, 2015
Appeals and Oley Valley School     :
District                           :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE MARY HANNAH LEAVITT, Judge
                HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                      **FILED:  August 25, 2015**

       Before this Court are the consolidated appeals of Oley Valley Development, Inc. (Appellant or Taxpayer) from the August 11, 2014 and September 12, 2014 orders of the Berks County Court of Common Pleas (Trial Court),[1] which dismissed its appeals from two property tax assessments entered by the Berks County Board of Assessment Appeals (Board). The assessments involved: (i) eighty-three (83) unsold lots of a 117-lot single-family residential subdivision known as "Meadow View Farms" (Property), and (ii) one additional lot, also part of the subdivision, which has been designated for common use among

---

[1] A trial was held before the Honorable Scott. E. Lash on August 5, 2014.

all lot owners of the subdivision (Clubhouse Lot).[2]  By its September 12, 2014 order, the Trial Court denied Appellant's Motions for Post-Trial Relief.  This appeal followed.[3]

The Property consists of "age restricted" residential lots.[4]  The current assessments for the lots were established by court order following an appeal by Taxpayer filed in August, 2010.  In 2012, the Trial Court considered an appeal by Taxpayer from property tax assessments entered by the Board for tax years 2011 and 2012 for the same subdivision.  At the 2012 trial, each party presented testimony by an appraiser expressing an opinion of fair market value: Taxpayer's expert in 2012, as well as in the matter presently before us, was Michael J. Samuels (Appraiser), who valued the fair market value of the subdivision as of July 26, 2010, in the aggregate, to be $2,075,000 or $21,392 per lot.  The appraiser for the Board and the Oley Valley School District opined that the value of each lot

---

[2] In August 2013, Appellant filed eighty-six (86) assessment appeals for 86 undeveloped lots. On September 13, 2013, the Board held a hearing and issued a decision on October 11, 2013, determining that the assessments would remain the same for the 2014 tax year.  Appellant filed its appeal from the decision of the Board on November 8, 2013; however, on June 16, 2014, Appellant notified the trial court that some of those lots were sold, and the appeal was withdrawn as to those lots.  On June 19, 2014, the Trial Court entered an order consolidating the appeals on 83 lots, identified as No. 13-25217; the Clubhouse Lot remained a separate appeal, identified as No. 13-25400.

[3] This Court's review in a tax assessment matter is limited to a determination of whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Green v. Schuylkill County Board of Assessment Appeals,* 772 A.2d 419, 426 (Pa. 2001). While the weight of the evidence is before the appellate court for review, the trial court's findings of fact are entitled to great weight and will be reversed only for clear error. *Id.*

[4] To qualify as an Age Qualified Residential Community (AQRC), at least one member of the household must be at least 55 years of age, with no more than four (4) individuals residing in the household, and no residents under the age of 18, except during the summer months or holidays; any person not related by blood or marriage to the principal owner must also be 55 years of age or older. (August 11, 2014 Opinion of the Trial Court, Finding of Fact (F.F.) ¶ 6, R.R. at 186a.)

for 2011 was $35,050 and for 2012 was $36,600.[5]  In its 2012 decision, the Trial Court stated:

> [T]he gravamen of this appeal is whether to consider the assessment of these lots in the context of the subdivision, in essence as one whole, thereby including considerations relating to the costs of development.  In urging [the Trial Court] to so find, Taxpayer's appraiser, Samuels, points out that an extensive inventory of lots have not been sold and will likely take several years to sell, particularly given the current state of the economy.  During the pendency of sales, Taxpayer would continue to be saddled with taxes, maintenance, and other subdivision costs.  Accordingly, Samuels believes that a form of the income approach, known as the development approach, is the proper method.

(February 27, 2012 Trial Court Opinion, Reproduced Record (R.R.) at 233a-234a.)

The Trial Court, however, rejected the Taxpayer's argument in 2012, finding this Court's opinion in *Penn's Grant Associates v. Northampton County Board of Assessment Appeals*, 733 A.2d 23 (Pa. Cmwlth. 1999) to be dispositive, and stating:

> As with Phase I of the *Penn's Grant* case, [t]axpayer has sold individual lots from the Subdivision, thereby conferring authority upon the Assessment office to assess each lot on an individual basis.  This authority is now set

---

[5] The appraisal offered by the Board and the School District for the 2012 appeal is not part of the certified record.  The Trial Court refers to this appraisal in its 2012 opinion and order, noting that it utilized the sales comparison approach, and identified five separate lot sales for comparison. (February 27, 2012 Trial Court Opinion, R.R. at 238a-239a.)  The Trial Court further noted that Taxpayer's appraisal for 2012 considered the sales comparison approach, but did not reach a conclusion of fair market value based on this approach.  (*Id*., R.R. at 237a-238a.)  In the appeal before us, Taxpayer's appraisal also considers both the sales comparison approach and the development approach, and reaches the conclusion that the value of the Property is roughly the same under either approach.  (Taxpayer's appraisal, R.R. at 48a.)  However, Taxpayer acknowledged at the 2014 trial that the comparable sales used for the sales comparison approach were based on subdivision sales and not on the sale of individual lots.  (August 5, 2014 Hearing Testimony, R.R. at 279a-280a.)

3

forth in the new Consolidated County Assessment Law at 53 Pa. C.S.A. [sic] § 8817, which replaced 72 P.S. § 5347.1, and states, in pertinent part:

> (a) General rule. – In addition to other authorization provided in this chapter, the assessors may change the assessed valuation on real property when a parcel of land is subdivided into smaller parcels or when improvement[s] are made to real property or existing improvements are removed from real property or are destroyed. The recording of a subdivision plan shall not constitute grounds for assessment increases until lots are sold or improvements are installed…

(February 27, 2012 Trial Court Opinion, R.R. at 241a.) The Trial Court in 2012 determined that Taxpayer failed to meet its burden to overcome the presumption of the validity of the existing assessments, because Appraiser improperly utilized the development approach[6] to valuation and appraised the lots as a subdivision instead of as individual parcels, and dismissed the appeals.

---

[6] Our Court explained the development approach to valuation in *Penn's Grant Associates v. Northampton County Board of Assessment Appeals*, 733 A.2d 23, 28 (Pa. Cmwlth. 1999) as follows:

> The "development approach" is an approach used to value multiple unimproved lots in a subdivision or potential subdivision as a unit. It has also been referred to as the "cost of development method;" the "anticipated use method;" the "lot method;" the "developer's residual approach;" the "developer's absorption method;" and the "subdivision approach." Under this method of assessment, the expected sale prices of the lots are considered and direct and indirect development and marketing costs are also considered in order to find true market value. Although the development approach is most often used to determine market value for raw land that is not yet subdivided, where the land's best use is that of a residential subdivision, it is also used when the land is already fully subdivided.

4

The present appeal followed a trial during which only Appraiser testified, and Appraiser's report was admitted into evidence. (August 5, 2014 Hearing Testimony (H.T.), R.R. at 271a-291a.) The Trial Court denied the appeal, noting that Taxpayer previously raised the same issues in the 2012 appeal, and stated that for the reasons set forth in the 2012 appeal, it was again declining to employ the development approach; the Trial Court incorporated its decision of February 27, 2012 into its opinion and order. (August 11, 2014 Opinion of the Trial Court (Tr. Ct. Op.), R.R. at 183a-189a.)

In tax assessment appeals, the initial burden is upon the Board to establish the prima facie validity of the assessment by placing into evidence the official assessment record; the burden then shifts to the taxpayer to come forward with competent, relevant evidence that the assessment was incorrect, arbitrary or otherwise in disregard of the taxpayer's rights. *Penn's Grant*, 733 A.2d at 23 n.5. Appellant argues, first, that the Trial Court applied an incorrect legal standard in dismissing its assessment appeal, and asserts that Appraiser properly established the correct value for the subdivision lots under the development approach. We do not agree. In *Penn's Grant*, this Court made clear that the development approach to assessment is properly used for the valuation of multiple unimproved subdivision lots *as a unit*, but once there has been a change in the condition of the property, such as the sale of a lot or improvements made, each individual lot must be assessed on an individual lot basis. 733 A.2d at 27.

Appellant seeks to distinguish itself from the taxpayer in *Penn's Grant*, arguing that in *Penn's Grant*, the taxpayer was contending that only *sold*

---

733 A.2d at 28 (citing J.D. Eaton, Real Estate Valuation in Litigation 223 (American Inst. of Real Estate Appraisers 1982)).

lots in the first phase of a development were subject to an individualized assessment, and unsold lots in that phase should be assessed as a whole using the development approach. Appellant contends that our Court in *Penn's Grant* established that the taxpayer in that case did not offer sufficient evidence to overcome the board's assessment because it only presented evidence as to the value of the entire phase and not for individual lots; here, Appellant argues, Appraiser has provided individual valuations, but with a deduction for improvement costs for all lots before determining the individual lot value, as authorized by the Court in *Penn's Grant*.

The Trial Court rejected this argument, finding it misleading, and noted that Taxpayer's individual lot assessments were "based on uniformly applying 1/83rd of the continuing subdivision costs to each of the eighty-three (83) lots." (Tr. Ct. Op., R.R. at 188a.) In addition, the Trial Court noted that Taxpayer's method would result in non-uniform assessments, with unsold lots being assessed at a far lower value than lots already sold, in violation of the uniformity clause of the Pennsylvania Constitution.[7] *Id.* We agree.

In *Penn's Grant*, the Court did not reach the issue of the propriety of applying a standard deduction to each lot to reflect the cost of site improvements yet to be completed, without accounting for the actual degree of completion of each lot. We need not do so here. In arguing for the development approach in the instant matter, Appellant contends that in addition to a deduction for uncompleted site improvement costs such as curb repairs, sidewalks, landscaping and the construction of the community clubhouse, the assessment may take into account ongoing indirect costs such as marketing and taxation, and may factor in a time

---

[7] Article IX, § 1 of the Pennsylvania Constitution.

allowance for exposure of each lot to the open market. However, the development approach, which considers both direct and indirect development and marketing costs, cannot be utilized when individual lot assessments are required; in *Penn's Grant*, we discussed the development approach solely in the context of an assessment of the value of a phase of development wherein no individual lots had yet been sold, acknowledging there that indirect costs related to the development of such lots could be taken into consideration in arriving at an opinion of value used as a basis of assessment. *Penn's Grant*, 733 A.2d at 29. That is not the case here, where a number of lots have been sold. As such, we affirm the dismissal of the appeals from assessment of the eighty-three (83) unsold lots.

With regard to the Clubhouse Lot, Appellant argues that the lot has no market value where it is designated on the approved subdivision plan as nothing more than a clubhouse, to be utilized by all of the lot owners as a common area. It asserts that the lot cannot be sold to anyone, and its value is redundant, based on the fact that the clubhouse is recognized in the assessment and market value of each of the remaining residential lots. The Trial Court disagreed, finding that the Clubhouse Lot has not yet been built, is not distinguishable from any of the other eighty-three (83) lots and has fair market value; the Trial Court opined that once its designated use is in place, the Clubhouse Lot can be reassessed. (Tr. Ct. Op., R.R. at 188a.) Appraiser testified before the Trial Court that the Clubhouse Lot cannot be sold by a homeowner's association, and is restricted to use as common area, with no value in and of itself. (H.T., R.R. at 281a-282a.) Counsel for Appellant stated that once a subdivision plan that includes a community clubhouse has been approved by a municipality, Taxpayer is obligated to complete it, unless it seeks and receives approval for a modification of the subdivision plan. (*Id.*, R.R. at

7

282a.) Here, the certified record does not include the subdivision development plan, and the Trial Court did not make a factual finding as to whether or not the Clubhouse Lot is in fact restricted to use as a common area or whether it might be sold by the developer for some other purpose. As such, the order of the Trial Court is vacated insofar as it dismissed Appellant's assessment appeal as to the Clubhouse Lot, and this matter is remanded to the Trial Court for a determination as to the designation of the Clubhouse Lot and, based thereon, a determination as to its fair market value. The Trial Court's order, insofar as it dismissed the Appellant's assessment appeal as to eighty-three (83) unsold lots of a subdivision, is affirmed. The Trial Court's order denying the Motions for Post Trial Relief is affirmed.

 

_____
**JAMES GARDNER COLINS, Senior Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Oley Valley Development, Inc.,   :
  :
     Appellant   :
  :   No. 1705 C.D. 2014
  v.   :   No. 1706 C.D. 2014
  :   No. 1833 C.D. 2014
Berks County Board of Assessment   :
Appeals and Oley Valley School   :
District   :

## O R D E R

AND NOW, this 25th day of August, 2015, the August 11, 2014 order of the Berks County Court of Common Pleas, insofar as it dismissed the assessment appeal of Oley Valley Development, Inc., identified as No. 13-25217, as to eighty-three (83) unsold lots of a subdivision, is AFFIRMED, and insofar as it dismissed the assessment appeal of Oley Valley Development, Inc., identified as No. 13-25400, as to an additional lot identified by tax identification number 67-5348-01-26-5962 and known as the clubhouse lot, is VACATED and this matter is REMANDED for further proceedings consistent with the attached opinion.

The September 12, 2014 order of the Berks County Court of Common Pleas denying the Motions for Post Trial Relief of Oley Valley Development, Inc. is AFFIRMED.

Jurisdiction relinquished.

_____
**JAMES GARDNER COLINS, Senior Judge**